SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**CASSADY A. ADAMS, CO Bar #48807**
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:23-cr-000335-MO** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ALONDRA STEPHANIE TRUJILLO,** | |
| **Defendant.** | |

## Introduction

This case is a tragedy. On July 12, 2020, Armando Valdivia and Estevan Valdivia—two

brothers, ages 26 and 28, respectively—died of fentanyl overdoses in their home because of

fentanyl from the defendant, Alondra Trujillo. Their mother was at home that day and attempted

to provide medical care to them simultaneously. First responders were unable to save the two

brothers. Their mother witnessed both her sons die before her eyes.[1]

---

[1] The family of Armando and Estevan Valdivia has given permission for the government to use
their names and photographs in public court filings.

**Government's Sentencing Memorandum** **Page 1**

This destructive drug and Trujillo's role in distributing it caused long-lasting heartbreak and pain.

Trujillo pleaded guilty to distribution of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). For the reasons stated below, the government recommends the Court impose a sentence of 120 months imprisonment, followed by three years of supervised release.

## Factual Background

### A. The Offense Conduct

#### 1. Armando and Esteven Valdivia (Oregon Overdose Deaths)

On the afternoon of July 12, 2020, first responders were dispatched to the residence of Armando and Esteven Valdivia, in Woodburn, Oregon, on a report that the brothers were nonresponsive and having a medical emergency. PSR ¶ 31. When first responders arrived, they performed CPR on Armando and Esteven, who were subsequently pronounced deceased. *Id.*

The medical examiner determined that the cause of their deaths was fentanyl toxicity. *Id.*



ARMANDO J. VALDIVIA
MARION COUNTY

AUTOPSY PERFORMED:
BY:
ON:    Monday, July 13, 2020 – 11:40 a.m.
AT:    13309 SE 84th Avenue, Suite 100, Clackamas, Oregon  97015

CAUSE OF DEATH:        FENTANYL TOXICITY

MANNER OF DEATH:        ACCIDENT

ESTEVEN L. VALDIVIA
MARION COUNTY

AUTOPSY PERFORMED:
BY:
ON:    Monday, July 13, 2020 – 10:50 a.m.
AT:    13309 SE 84th Avenue, Suite 100, Clackamas, Oregon  97015

CAUSE OF DEATH:        FENTANYL TOXICITIY

MANNER OF DEATH:        ACCIDENT

Through further investigation, police learned that Armando met up with the defendant, Trujillo, the day prior (July 11, 2020) in Woodburn, Oregon, and purchased counterfeit

**Government's Sentencing Memorandum**                    **Page 2**

oxycodone pills containing fentanyl from her. PSR ¶¶ 32-35. Messages between the two brothers confirmed that they both consumed the pills prior to their overdose deaths.

On July 12, 2020, Armando and Esteven's mother awoke early to drive Armando to work. PSR ¶ 36. She reported that when Armando entered her vehicle, he began to nod off and indicated that he was tired. *Id.* When they arrived at Armando's job, Armando was unresponsive. *Id.* She then drove Armando home, and ultimately, Armando came into the house, said he was feeling sick, and lay down. *Id.*

A few hours later, Esteven came into the house, sat down, and slumped over, becoming nonresponsive. *Id.* Their mother called 911 after learning that her two sons were blue in the face. *Id.* She later described this experience: "[N]othing compares to the trauma of trying to save two of your sons at the same time. I performed CPR, begged them to breathe again, but it was too late. What I saw and lived through that day will haunt me forever." *See* Victim Impact Statement of Armando and Esteven's mother (submitted to the Court and defense via email).

Photographs of Armando (left) and Esteven (right) are included below, for the Court's reference:

 

### 2. Kelvin Hargand (Washington Overdose Death)

HSI learned about the overdose death of Kelvin Hargand[2] during its investigation into Trujillo. PSR ¶¶ 22-30. On June 19, 2020, Hargand, a 22-year-old crewmember, was discovered deceased on a docked barge in Everett, Washington. PSR ¶ 22. Hargand's death was subsequently ruled a fentanyl overdose death. PSR ¶ 23.

Through further investigation into Hargand's overdose death, HSI identified the defendant, Alondra Trujillo, as a drug dealer involved in the sale of counterfeit oxycodone pills containing fentanyl in the Western District of Washington, and learned that Hargand had purchased drugs from Trujillo in the past. PSR ¶¶ 24-29.

As part of the plea agreement with the United States in this case, the US Attorney's Office in the Western District of Washington has agreed to forego prosecution of Trujillo for the offense conduct that occurred in that district. PSR ¶ 30. Thus, the government is not seeking to prove that Trujillo caused Hargand's death. *Id.* However, because Hargand's death was part of the investigation in this case, the government is submitting a statement from Hargand's mother regarding the loss of her son and the impact this loss has had on her life. A photograph of Hargand is included below, for the Court's reference:



---

[2] The family of Kelvin Hargand has given permission for the government to use his name in public court filings.

**Government's Sentencing Memorandum**                                    **Page 4**

### 3.  Search of Defendant's Residence and Review of Evidence

On the morning of July 23, 2020, law enforcement carried out a federal search warrant on Trujillo's residence in Kelso, Washington. PSR ¶ 39. There, they seized her cellphone, an M30 pill, two containers of white powdery residue, and a red notebook containing a drug ledger. *Id.* The ledger included numerous pages of handwritten notes detailing drug transactions, including documentation of customer names, amounts paid and owed, and pills bought and sold. PSR ¶ 45. This appeared to include previous transactions with Armando Valdivia ("Mando") and Kelvin Hargand. *Id.* An HSI agent reviewed the ledger and determined that Trujillo was likely responsible for selling 12 grams of fentanyl to her customer base. *Id.* A search of Trujillo's phone revealed multiple message exchanges between Trujillo and drug customers. PSR ¶ 41.

### 4.  Federal Charges

On October 17, 2023, a federal grand jury in the District of Oregon returned an indictment charging Trujillo with one count of distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

## B.  The Plea Agreement & Guideline Computations

On May 13, 2025, Trujillo pleaded guilty to the sole count of the indictment, distribution of fentanyl. PSR ¶ 1. The presentence report has calculated Trujillo's criminal history category to be V. PSR ¶ 88. Her total offense level is 13 (prior to the application of any upward departures/variances). PSR ¶ 64.

Under the terms of the plea agreement, the parties stipulated to a 14-level upward departure under then USSG § 5K2.1 for the deaths of Adult Victim 1 and Adult Victim 2 (Armando and Esteven), which resulted from the offense. PSR ¶ 8. As of November 1, 2025,

USSG § 5K2.1 departure provisions have been removed from the Guidelines Manual, however. PSR ¶ 8, n. 1. Therefore, the government requests that the Court apply an upward variance under 18 U.S.C. § 3553(a) to achieve this sentencing recommendation and account for the two deaths that Trujillo is responsible for causing. *Id.*[3] The parties also stipulated to a two-level downward variance under 18 U.S.C. § 3553(a) for early case resolution.

Pursuant to the plea agreement, the government recommends a sentence of 120 months custody in this case, followed by three years of supervised release. PSR ¶ 12.

**Argument**

### A.  18 U.S.C. 3553(a) Sentencing Factors

There are general factors that district courts take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Sentencing Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

---

[3] Defense has been consulted about this and indicated no objection with this proposal, to keep the spirit of the plea agreement in effect for this case.

**Government's Sentencing Memorandum**                                               **Page 6**

(7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Many of the § 3553(a) factors warrant the sentence requested by the government in this case, including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of the criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . afford adequate deterrence . . . protect the public . . . ." and to provide needed education, training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

### B. Analysis of Sentencing Factors

This case illustrates the harmful effects of fentanyl—enduring pain that is felt every day by families who have lost their loved ones because of this drug.  Armando's and Esteven's mother described this pain, stating, "No mother should ever have to bury her children . . . . What I saw and lived through that day will haunt me forever. . . . The joy, the laughter, the warmth that once filled our home is gone. All I have left are memories – and their urns." Additionally, several years after Esteven and Armando died, their older brother took his own life as a result of the grief he was suffering.

Kelvin's mother also described this loss due to fentanyl, "As a parent, I am devastated by the pain of losing my son Kelvin, more so to see the pain that it has caused his brother and sister. They have suffered so much this last five years that no amount of counseling they have gone through has healed their broken hearts. . . . His death has left me unable to function some days for knowing he is gone forever on this earth brings so much pain. . . . My son was a beloved member of our family, and his absence has created a void that can never be filled."

**Government's Sentencing Memorandum**                                              **Page 7**

Armando, Esteven, and Kelvin were dearly loved, and their families will never be the same because of the fentanyl that these three young men took.

Trujillo admitted to causing Armando's and Esteven's overdose deaths by virtue of her plea agreement. A 120-month sentence is appropriate considering the nature of this offense and its devastating consequences.

Trujillo's criminal history also weighs in favor of a 120-month sentence. Trujillo's adult criminal history spans back to her early twenties, and includes multiple misdemeanor offenses as well as prior felony charges, many of which are drug related. PSR ¶¶ 69-86. This includes two convictions for possession of a controlled substance (misdemeanor) in 2015; three convictions for petty theft in 2015; and convictions for other offenses—vandalizing a place of worship (2014), taking a vehicle without owner's consent (2014), obstructing a public officer (2015), and trespass and unlawful use of a controlled substance and possession of paraphernalia (2015). PSR¶¶ 69-77. Trujillo accrued additional charges in her twenties, including possession of a controlled substance without a prescription (2015), attempted violation of the uniform controlled substance act (2016), theft III (2019), criminal trespass I (2021), and reckless endangerment (2022). PSR ¶¶ 78-82.

Trujillo's conduct during her late twenties and early thirties also reflects charges of abandon dependent II (felony) (dismissed in 2025 upon completion of mental health court), and a protection order violation (2022). PSR ¶¶ 83-84.

Later, in November 2022, Trujillo was contacted by police officers two days in a row and provided a false name on both occasions. PSR ¶¶ 85-86. A search of the vehicle Trujillo was occupying (as a passenger) on November 16, 2022 revealed tinfoil and numerous suspected

**Government's Sentencing Memorandum**                                                    **Page 8**

fentanyl pills. PSR ¶ 85. The following day, when Trujillo was booked into jail on an outstanding arrest warrant, correctional officers found bag of blue fentanyl pills concealed in Trujillo's person. PSR ¶ 86.

The presentence report details more of Trujillo's challenges in her life, leading up to the time of this offense as well as afterwards, including drug addiction and housing instability. PSR ¶¶ 95-96, 99, 109-113.

She has improved her life in recent years, however. This includes attending inpatient substance abuse treatment in 2023. PSR ¶ 99. Trujillo has also performed very well on pretrial release in this case, including successfully completing substance use treatment and continuing to participate in counseling. PSR ¶ 19. Trujillo has also maintained employment for most of her pretrial release, aside from a period in between jobs in 2025. PSR ¶ 20. All her drug tests have been negative, and she has been compliant and in regular communication with her pretrial officer. PSR ¶ 21.

The government believes it is appropriate for the Court to take this mitigating information into account, along with the other sentencing factors and aggravating circumstances of this case.

Trujillo also indicated an early intent to resolve her case. The government recommends the two-level downward variance under 18 U.S.C. § 3553(a) to acknowledge this.

The government's requested sentence of 120 months custody, followed by three years of supervised release, takes into account all of the sentencing factors and serves the purpose of the criminal laws. Trujillo was not a large-scale drug dealer, but the fentanyl she sold had terrible consequences. A 120-month custody sentence properly reflects the seriousness of the offense,

promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public.

### C. Restitution

The government is requesting restitution in the amount of $6,349 for the mother of Armando and Esteven Valdivia. This is the cost of cremation expenses for both sons ($2,960 per son), and the cost of an urn ($429). Victim payment information will be provided to the Court separately.

### Conclusion

Based on the foregoing, the government recommends the Court impose a sentence of 120 months custody, followed by a three-year term of supervised release, and a $100 fee assessment.

Dated:  January 21, 2026                                   Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/Cassady A. Adams*
CASSADY A. ADAMS, CO Bar #48807
Assistant United States Attorney

**Government's Sentencing Memorandum**                                   **Page 10**